NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
JULIUS J. NAM (Cal. Bar No. 288961)
Assistant United States Attorney
Criminal Appeals Section
        312 N. Spring St. Ste. 1000
        Los Angeles, California 90012
        Telephone: (213) 894-8692
        Facsimile: (213) 894-8513
        E-mail:    julius.nam@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                    UNITED STATES DISTRICT COURT

                FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CR No. 15-621-R-5 |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE |
| v. | |
| ARMEN KHALULYAN, | |
| Defendant. | |

     Plaintiff United States of America, by and through its counsel
of record, the United States Attorney for the Central District of
California and Assistant United States Attorney Julius J. Nam, hereby
files its opposition to defendant ARMEN KHALULYAN's Motion for Early
Termination of Supervised Release.  The government opposes the Motion
because defendant has failed to demonstrate exceptional conduct and
interest of justice justifying early termination.  The United States
Probation Office also opposes the Motion.

//

//

//

1    This opposition is based upon the attached memorandum of points

2  and authorities, the files and records in this case, and such further

3  evidence and argument as the Court may permit.

4  Dated: June 23, 2020             Respectfully submitted,

5                                   NICOLA T. HANNA
                                    United States Attorney
6
                                    BRANDON D. FOX
7                                   Assistant United States Attorney
                                    Chief, Criminal Division
8

9                                   _____/s/_____
                                    JULIUS J. NAM
10                                  Assistant United States Attorney
                                    Criminal Appeals Section
11
                                    Attorneys for Plaintiff
12                                  UNITED STATES OF AMERICA

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3
4
5
6
7

Defendant Armen Khalulyan seeks early termination of his three-year supervised release, but the government urges the Court to withhold that rare remedy.  Defendant fails to establish that early termination "is warranted by the conduct of the defendant released and the interest of justice."  18 U.S.C. § 3583(e).

8
9
10
11
12
13
14
15
16
17
18
19
20
21

Defendant has not provided the Court with sufficient justifications for early termination of his supervised release, which began in December 2017 upon the completion of his 18-month prison sentence for his substantial role in a nine-defendant, multi-year credit-card skimming conspiracy.  Nothing in defendant's motion for early termination demonstrates that defendant has displayed "exceptionally good behavior," United States v. Miller, 205 F.3d 1098, 1101 (9th Cir. 2000), or identified "any unusual or extraordinary circumstances," United States v. Carter, No. CR 10-0363 SBA, 2013 WL 2255875, at *2 (N.D. Cal. May 22, 2013), that justifies "the rarely granted remedy of early termination of supervised release," United States v. Emmett, 749 F.3d 817, 824 (9th Cir. 2014) (Nguyen, J., dissenting) (citing United States v. Weber, 451 F.3d 552, 559 n.9 (9th Cir. 2006)).

22
23
24
25
26
27
28

Defendant conclusorily claims that his "conduct since release, and the interests of justice are served by early termination" (Motion (Dkt. 382) at 2), but he fails to demonstrate that his imperfect compliance with the terms of his supervised release somehow rises to "exceptionally good behavior" or an "extraordinary circumstance[]" justifying early termination.  Nor does defendant show that interest of justice warrants early termination.

**II.   FACTS AND PROCEDURE**

    **A.   Facts**

      The facts of defendant's underlying offenses summarized below are drawn from paragraph 9 of defendant's plea agreement (Dkt. 193) and from the PSR:

      Defendant was a member of a conspiracy that lasted over more than 27 months between 2013 and 2015, during which at least nine individuals ran a credit-card-skimming operation at gas stations in Los Angeles, Orange, and Riverside Counties.  Defendant and his co-conspirators built credit-card skimmers and installed them at gas-station pumps to collect debit- and credit-card numbers from unsuspecting customers.  The skimmers were equipped with Bluetooth technology allowing defendant and his co-conspirators to access the skimmers remotely and obtain the stolen credit and debit card numbers stored on the skimmers.  Those stolen numbers would then be used to make fraudulent purchases.

      In October 2015, law enforcement found defendant in possession of nearly 500 black credit cards encoded with real credit- and debit-card numbers, many of which were obtained from skimmers.  On a flash drive, defendant also possessed the names of the cardholders that corresponded to the numbers.  At the same time, another member of defendant's conspiracy was found in possession of access-device-making equipment, including a computer connected to a magnetic card reader and writer, which the conspiracy used to create counterfeit access devices using the card numbers stolen from gas-station customers.

      In all, the loss amount attributable to defendant and his co-conspirators stood at more than $250,000.  (PSR ¶ 34.)

**B.    Procedure**

In November 2015, defendant and eight others were charged with conspiracy to possess 15 or more unauthorized access devices (18 U.S.C. § 1029(b)(2)), possession and attempted possession of 15 or more unauthorized access devices (18 U.S.C. §§ 1029(a)(3), (b)(1)), aggravated identity theft (18 U.S.C. § 1028A(a)(1)), and possession of device-making equipment (18 U.S.C. § 1029(a)(4)).  (Dkt. 97.) After the parties filed a written plea agreement, the Court accepted defendant's guilty plea to conspiracy to possess 15 or more unauthorized access devices.  (Dkt. 193, 235.)

In the Presentence Report ("PSR"), the United States Probation Office ("USPO") correctly arrived at the Guidelines range of 37 to 46 months after determining the total offense level of 19 and criminal history category of III (consisting of five misdemeanor convictions that include California convictions for burglary and check forgery). (PSR ¶¶ 49-53, 97.)  The PSR noted that defendant was "deeply involved in multiple aspects of this offense [of conspiracy] and integral to the completion of the offense," which victimized multiple gas stations throughout southern California.  (PSR ¶ 39.)  The government agreed with the USPO's calculations and recommended a low-end sentence of 37 months in prison.

In June 2016, the Court (the Honorable Manuel L. Real) applied a significant variance from defendant's Guidelines range and sentenced defendant to 18 months' imprisonment and three years of supervised release.  (Dkt. 327.)

Defendant began serving his supervised-release term on December 29, 2017.  (Declaration of Julius J. Nam ("Nam Decl.") ¶ 3(b).) Thus, the anticipated date of termination of defendant's supervision

1    is December 28, 2020.   The government understands that when defendant
2    was released from Bureau of Prisons custody on December 29, 2017, he
3    was placed in the custody of U.S. Immigration and Customs Enforcement
4    ("ICE") prior to his removal proceedings. (Id. ¶ 3(b).)

5        In May 2019, defendant was released from ICE custody on bond and
6    began receiving USPO supervision.  (Id. ¶ 3(c).)  Within two weeks of
7    his release, defendant met with his supervising USPO officer for the
8    first time and received instructions and admonitions about the
9    conditions of his supervised release, including then-applicable
10   General Order 01-05 of this Court.  (Id. ¶ 3(d).)

11       In December 2019, Officer Galustov learned from defendant that
12   defendant had leased a car by opening a line of credit without prior
13   approval of the Probation Officer, as required by General Order 01-
14   05.  (Id. ¶ 3(e).)  Defendant then admitted to having opened two
15   additional lines of credit without prior approval.  (Id.)  When asked
16   why defendant did not receive prior approval for the lines of credit,
17   he explained that he "forgot."  (Id.)  Officer Galustov then gave
18   defendant verbal admonishment to make sure to receive approval before
19   opening any line of credit.  (Id.)  Officer Galustov did not file a
20   petition on a supervised release violation with the Court for
21   defendant's violation conduct.  (Id.)

22       Although defendant claims that he is in "low-risk supervision"
23   category (Motion at 2), the USPO has in fact placed him in the higher
24   "low/moderate" recidivism risk group.  (Nam Decl. ¶ 3(f).)  In light
25   of defendant's criminal history, including the underlying offense of
26   access device fraud conspiracy, and his violation conduct involving
27   multiple new lines of credit, Officer Galustov opposes defendant's
28   request for early termination of supervise release.  (Id. ¶ 3(g).)

                                    4

**III. DEFENDANT HAS NOT DEMONSTRATED SUFFICIENT JUSTIFICATION FOR EARLY TERMINATION OF SUPERVISED RELEASE**

Section 3583(e) allows a district court to end a supervise release term early only "if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e).  The statute is meant to give courts the ability to terminate supervised release "to account for new or unforeseen circumstances," Miller, 205 F.3d at 1101--e.g., "exceptionally good behavior by the defendant," id., or "unusual or extraordinary circumstances," Carter, 2013 WL 2255875, at *2--that "render a previously imposed term or condition of release either too harsh or inappropriately tailored to serve the general punishment goals of section 3553(a)." Miller, 205 F.3d at 1101.  "It is [defendant's] burden to establish that he is entitled to the rarely granted remedy of early termination of supervised release." Emmett, 749 F.3d at 824 (Nguyen, J., dissenting); Weber, 451 F.3d at 559 n.9 (citing United States v. Weintraub, 371 F. Supp. 2d 164, 167 (D. Conn. 2005), and United States v. McKay, 352 F. Supp. 2d 359, 361 (E.D.N.Y. 2005)).

Defendant's motion does not sufficiently establish grounds for early termination.  Indeed, neither defendant's conduct nor the interest of justice warrant that remedy.

As an initial matter, defendant's Probation Officer disagrees with defendant's description that he "ha[s] spent more than a year on supervision successfully now" after his release from ICE custody, and that he has shown that he "can self-manage a stable, law-abiding life." (Motion at 2, 5, 6; Nam Decl. ¶ 3.)  In light of defendant's criminal history--including convictions for burglary and check

5

forgery, alongside the underlying offense in which he had an integral role in a large-scale access device conspiracy--defendant's failure to receive prior approval for new lines of credit he opened within the first seven months of supervision is not a negligible technical violation that this Court should overlook.  Defendant's conduct signals a lack of respect for the law, an incautious attitude toward the Court's orders, and a breach of the Court's trust.

Even if the Court were to set aside defendant's violations involving new lines of credit (which it should not), defendant's otherwise compliant supervision history and stable employment and residential situations constitute only the minimum expected of defendants on supervised release.  Much more is required to satisfy the "exceptionally good behavior" standard that the Ninth Circuit has drawn.  Miller, 205 F.3d at 1101.

Mere compliance with supervised release conditions is not enough for early termination.  See, e.g., United States v. Bauer, No. 5:09-CR-00980-EJD, 2012 WL 1259251 at *2 (N.D. Cal. Apr. 13, 2012) ("[T]he reasons cited by Defendant--compliance with release conditions, resumption of employment and engagement of family life--are expected milestones rather than a change of circumstances rendering continued supervision no longer appropriate."); McKay, 352 F. Supp. 2d at 361 ("Model prison conduct and full compliance with the terms of supervised release is what is expected of a person under the magnifying glass of supervised release and does not warrant early termination."); Weintraub, 371 F. Supp. 2d at 167 ("Although Weintraub's ongoing and full compliance with all conditions of supervised release, including payment of the fine and restitution, is commendable, in the end that is what is required of all criminal

defendants and is not a basis for early termination of his supervised release."). In the absence of a showing of "exceptionally good behavior" that represents "changed circumstances" that warrant discharge of supervised release, courts have not granted early termination based only on required compliance and general good behavior. See United States v. Lussier, 104 F.3d 32, 36 (2d Cir. 1997) (concluding early termination reserved for rare cases of "exceptionally good behavior"); see also United States v. Smith, 219 F. App'x 666, 668 (9th Cir. 2007) (unpublished) (recognizing Lussier's holding that early termination should only be granted in rare cases with evidence of "exceptionally good behavior"); McKay, 352 F. Supp. 2d at 360 (same).

Here, defendant's violation of the prior-approval requirement for new lines of credit—concerning conduct in light of his underlying offense involving fraudulent uses of other people's credit- and debit-card information and a previous conviction for forgery—places him far short of the exceptionally-good-behavior standard. While defendant's otherwise compliant conduct over the past year is commendable, nothing shows him to be that exceptional supervisee for whom "a previously imposed term or condition of release [is now] either too harsh or inappropriately tailored to serve the general punishment goals of section 3553(a)." Miller, 205 F.2d at 1101. Defendant has not demonstrated that he has earned the rare remedy of termination of supervision.

As for the "interest of justice" prong of § 3583(e), defendant's failure to show "exceptionally good" conduct renders moot whether the interest of justice would be best served by termination. See United States v. Pregent, 190 F.3d 279, 283 (4th Cir. 1999) ("conjunction

7

'and' . . . clearly indicates that a district court must conclude that the early termination . . . is warranted both by the individual's conduct and also by the interest of justice").

In any event, the interest of justice also cuts in favor of continuing defendant's supervision.  At his sentencing, defendant received an already short term of 18 months--19 months lower than the low end of his Guidelines range.  Now that he has barely passed the one-year mark of his actual supervision by the USPO period since his release from ICE custody in May 2020, he seeks to be free from this Court's supervision.  This Court should, however, require defendant to serve the remainder of his supervised release through December 2020.  That would help ensure that defendant's sentence satisfies the goals of deterrence, protection of the community, and avoidance of unwarranted sentencing disparity in 18 U.S.C. § 3553(a), as adopted by 18 U.S.C. § 3583(c).  Moreover, nothing in defendant's motion points to "any unusual or extraordinary circumstances" in defendant's life, such as undue hardship, that supports early termination. Carter, 2013 WL 2255875, at *2.  The interest of justice demands that defendant fulfill the remainder of his supervised-release term.

**IV.  CONCLUSION**

Neither defendant's conduct nor the interest of justice merits early termination of his supervised release.  Defendant's motion should be denied.

8

<u>DECLARATION OF JULIUS J. NAM</u>

1.   I am an Assistant United States Attorney in the Central District of California.  I represent the government in CR 15-621-R-5, <u>United States v. Armen Khalulyan</u>.

2.   I submit this declaration in support of the government's Opposition to defendant Armen Khalulyan's Motion for Early Termination of Supervised Release.

3.   On June 17, 2020, I spoke with Officer Aleksander Galustov of the U.S. Probation and Pretrial Services ("USPO") and learned the following:

a.   Officer Galustov is defendant's supervising probation officer.

b.   Defendant's term of supervised release in this matter began on December 29, 2017.  Upon release from Bureau of Prisons custody on December 29, 2017, however, defendant was placed in the custody of U.S. Immigration and Customs Enforcement for removal proceedings.

c.   On May 7, 2019, defendant was released on immigration bond.

d.   On May 22, 2019, Officer Galustov met defendant for the first time and gave defendant notice and admonitions regarding the terms and conditions of his supervised release, including then-applicable General Order 01-05 of this Court.

e.   On December 12, 2019, Officer Galustov learned from defendant that defendant had leased a car by opening a line of credit without prior approval of the Probation Officer, as required by then-applicable General Order 01-05.  Defendant then admitted to having opened two additional lines of credit earlier in 2019 without prior

1   approval.  When asked why defendant did not receive prior approval

2   for the lines of credit, he explained that he "forgot."  Officer

3   Galustov then gave defendant verbal admonishment to receive approval

4   before opening any line of credit.  Officer Galustov did not submit a

5   petition on supervised release violation with the Court for

6   defendant's conduct.

7           f.   Throughout his supervision period, defendant has been

8   and remains in "Low/Moderate" recidivism risk category (out of Low,

9   Low/Moderate, Moderate, and High).

10          g.   In light of defendant's criminal history, including

11  the underlying offense of access device fraud, and his failure to

12  notify Officer Galustov of the new lines of credit, Officer Galustov

13  opposes defendant's request for early termination of supervise

14  release.

15

16  I declare under penalty of perjury under the laws of the United

17  States that the foregoing is true and correct to the best of my

18  knowledge and belief.  Executed on this 23rd day of June 2020, in San

19  Bernardino County, California.

20

21  _____

22  JULIUS J. NAM

2